FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

2002 SEP -4  P 3: 17

DEPU.

| | | |
|---|---|---|
| **NATIONAL CAPITAL** | : | |
| **ADMINISTRATIVE SERVICES** | : | |
| | : | |
| **v.** | : | **CIVIL NO. L-01-4191** |
| | : | |
| **CARMEN PINKERT** | : | |


## ORDER

On February 25, 2002, Defendant Carmen Pinkert filed a Motion to Dismiss.  For the

reasons stated herein, Pinkert's motion is DENIED without prejudice to refiling as a motion for

summary judgment.

## I. FACTS

Plaintiff National Capital Administrative Services ("NCAS") is the claims administrator

for the Russell Williams Health Care Plan ("the plan").  Pinkert is a plan participant who

suffered an injury caused by alleged medical malpractice.  The plan paid $178,803.25 in medical

bills incurred by Pinkert as a result of her injury.  Pinkert subsequently filed a negligence suit

against the doctor allegedly responsible for her injury and reached a settlement.

On December 31, 2001, NCAS filed suit against Pinkert.  The complaint includes the

following claims:

    (i)      enforcement of plan terms under 29 U.S.C. § 1132(a)(B)(ii);

    (ii)     breach of contract;



(iii)    equitable subrogation and reimbursement; and

(iv)    declaratory relief.

In essence, NCAS' complaint seeks reimbursement of the plan's payment of Pinkert's

medical expenses.

On February 25, 2002, Pinkert filed the instant motion to dismiss arguing that:

(i)    NCAS lacks standing to pursue the relief it seeks;

(ii)    the language of the plan does not support NCAS's plan enforcement and breach of contract claims; and

(ii)    NCAS's equitable subrogation argument is foreclosed by the Supreme Court's holding in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002).

## II. MOTION TO DISMISS STANDARD:

Ordinarily, a Complaint should not be dismissed for failure to state a claim under Federal

Rule of Civil Procedure 12(b)(6) unless it appears beyond all doubt that the plaintiff can prove no

set of facts in support of its claim which entitle it to relief. See Conley v. Gibson, 355 U.S. 41,

45-46 (1957); Labram v. Havel, 43 F.3d 918, 920 (4th Cir. 1995). The liberal pleading

requirements of Rule 8(a) demand only a "short and plain" statement of the claim. In evaluating

such a claim, the Court must accept as true all well-pleaded allegations of fact and view them in

the light most favorable to the plaintiff. See Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969).

In essence, the legal theory articulated, or even suggested, by the non-moving party must be one

that could not be the basis for a ruling in that party's favor.

## III. ANALYSIS

**Standing**

NCAS has standing. Under 29 U.S.C. §1132(e), the "district courts of the United States

have exclusive jurisdiction of civil actions under this subchapter brought by a . . . fiduciary." A

fiduciary includes, but is not limited to "any administrator." 29 U.S.C. 1002(14)(A). NCAS is

claims administrator for the plan and is, therefore, a plan fiduciary with standing to bring this suit

on behalf on the plan.

**Equitable Subrogation**

ERISA authorizes "equitable relief" for injuries suffered by ERISA plans. 29 U.S.C. §

1132(a)(3). Pinkert argues that the Supreme Court's decision in <u>Great-West Life & Annuity Ins.</u>

<u>Co. v. Knudson</u>, precludes the reimbursement sought by NCAS under 29 U.S.C. § 1132(a)(3)

because "money damages" do not qualify as equitable relief. 122 S.Ct. 708 (2002)

Similar to the instant case, the defendant in <u>Knudson</u> received a monetary settlement for

personal injuries, and the plaintiff sought reimbursement for benefits paid prior to the settlement.

The defendant, however, never personally received the settlement. Instead, the funds were

distributed directly to the defendant's lawyers and a trust set up to cover the defendant's medical

costs.[1]

Due to the facts attending the defendant's settlement, the Supreme Court found that it

would have been inequitable to allow personal liability and money damages because the

defendant never personally received the money settlement. The Court concluded that the money

damages sought by the plaintiff did not qualify as "equitable relief" authorized by ERISA. <u>Id.</u> at

714. The Court qualified its conclusion, however, by stating that equitable relief would include

actions to "restore to the plaintiff particular funds or property in the defendant's possession." <u>Id.</u>

In contrast to <u>Knudson</u>, the details of defendant's settlement in the instant case are

unknown. Specifically, it is unknown whether the settlement allocated monies for particular

purposes, and it is unknown how the funds were distributed. As a result, the Court is unable to

---

[1] A portion of the funds were also earmarked to reimburse the plaintiff.

determine if the damages sought by the plaintiff fall within the exception to Knudson's general

prohibition on the imposition of personal liability. Accordingly, the Court concludes that NCAS

has raised an issue of material fact, and Pinkert's motion to dismiss is hereby denied without

prejudice to refiling as a motion for summary judgment at the close of discovery.

**Plan Enforcement and Breach of Contract**

Pinkert argues that the language of the plan does not support NCAS's claim for

subrogation. Specifically, Pinkert argues that under section 1 of the subrogation/reimbursement

provision, two conditions that must be satisfied for NCAS to have a claim for subrogation. First,

Pinkert's injury must have been caused by or resulted from Pinkert's "acts or omissions."

Second, "other insurance" must have been available to cover Pinkert's injury. Pinkert contends

that neither of these requirements are satisfied.

NCAS counters that sections 2 and 3(c) of the plan grant a general right of subrogation.

Section 2 provides a list of parties against whom the plan has "rights of subrogation and/or

reimbursement" for "any and all payments, settlements, judgements, or awards . . . ." Section 3

states that must participants must "promptly reimburse" the plan when a recovery through

"settlement, judgment, award or other payment is received."[2]

The Court finds that NCAS fails to read sections 2 and 3 in context. Section 1, which

contains the two limiting provisions identified by Pinkert, refers to section 2 as describing the

sources against which the plan's rights of subrogation apply. Thus, section 2 does not define the

plan's "rights of subrogation and/or reimbursement," but instead serves to identify the parties

against whom those rights may be asserted.

Likewise, section 3 must be read in the context of the overall subrogation provision to

---

[2] Section 3 also states that it is the participant's obligation to do nothing to prejudice the plan's rights of subrogation and reimbursement.

make any sense. Section 3 serves primarily to establish that plan participants have an obligation to "promptly reimburse" the plan in instances where the plan has a right of subrogation. Section 3 does not define the plan's right of subrogation, nor does it identify the "settlement, judgment, award or other payment" that is subject to the plan's rights of subrogation.

Although the Court finds that NCAS must satisfy the requirements of section 1 to state a claim for enforcement of plan terms or breach of contract, it is unclear whether section 1 contains the requirements posited by Pinkert. Although the first sentence of section 1 states that the plan's rights of subrogation arise in instances where the injury results from the participant's acts or omissions, 1(a) and 1(b) nonetheless authorize subrogation where the "responsible party" is a third party non-plan participant.

With respect to the second requirement that "other insurance" be available, NCAS has submitted an affidavit stating that Pinkert's attorneys frustrated NCAS's attempt to assert a lien against the insurance carrier that paid Pinkert's settlement. Pinkert has submitted an affidavit denying these allegations.

The Court finds that this issue cannot be resolved without additional briefing. Because the case is proceeding to discovery on the equitable subrogation claim, it will not conserve resources to further delay discovery while the parties brief the Court's additional questions. Given NCAS's allegations of bad faith and the conflicting affidavits on this point, Pinkert's arguments are more appropriately evaluated in the context of a motion for summary judgment.

Accordingly, Pinkert's motion to dismiss is denied without prejudice with respect to NCAS's claims for plan enforcement and breach of contract. Pinkert may reassert her arguments in a motion for summary judgment. In responding to Pinkert's motion for summary judgment, NCAS shall abide by the Court's conclusions of law with respect to its reading of the contract.

Specifically, NCAS shall either explain to the Court how its claims fall within the dictates of

section 1, or it shall move to have the claims dismissed.

It is so ORDERED this ___ 3rd ___ day of September, 2002.


                                       Benson Everett Legg
                                       United States District Judge